IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:11CR3067 |
| | ) | |
| v. | ) | |
| | ) | FINDINGS, RECOMMENDATION, |
| MARK A. SKODA, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

  The defendant has moved to suppress all evidence located during the entry and search of real estate located at 13900 O Street, Lincoln, Nebraska, and the search and seizure of defendant's vehicle parked on that property February 22, 2011.  Filing No. 38.  The defendant claims Lancaster County Deputy Sheriff Dennis Guthard unlawfully entered the land at 13900 O Street without a warrant, and therefore any evidence concerning what he saw or the property seized as a result of that entry must be suppressed.  The defendant further contends that evidence found within his vehicle must be suppressed, either as the fruit of unlawfully entering the land, or because the officers failed to obtain a warrant or defendant's consent before searching the vehicle.

  The court finds the evidence discovered on the real property located at 13900 O Street, Lincoln, Nebraska should not be suppressed because defendant Mark Skoda lacked any ownership or possessory interest in the property at the time of the officer's entry, and therefore lacked any reasonable expectation of privacy in that property and any standing to object to the  search of the premises.  As to defendant's vehicle on the property, the court finds that even absent the defendant's consent, the investigating officers had probable cause to believe the vehicle was being used for, and would contain evidence of, illegal activity. The vehicle search was lawful under the "automobile exception" to the warrant requirement. Defendant's motion to suppress should be denied.

STATEMENT OF FACTS

Deputy Sheriff Guthard is a patrol officer for the Lancaster County Sheriff's Department. He has both training and experience in recognizing the components of a methamphetamine laboratory, and has a basic knowledge of how those components are used to manufacture methamphetamine.

During the early morning hours of February 22, 2011, Deputy Sheriff Guthard was performing his patrol duties east of Lincoln, Nebraska. O Street is an east/west road. In the area of 139th and O Street, there is a northbound driveway or access road off of O street which leads to a commercial use area and one residence; the commercial area to the west of the access road/driveway and the residence straight ahead and in the northeastern corner of the developed area at the site. (See below).



The developed area includes strip mall (which includes a bar) fronting O street, a storage unit facility behind the strip mall, and the residential area (which has a circular drive and includes a house, a metal Morton Building, and a lean-to pole shed).

Until about the first week of February, 2011, Deputy Sheriff Guthard's typical rounds through the 139th and O site included driving past the bar area, then circling through the roadways of the storage unit area. Upon completing his strip mall and storage unit rounds, he would return to the access road/driveway, turn right, and return to O street.

During his rounds through the storage unit area in late January, 2011, Deputy Sheriff Guthard saw a red van parked in front of storage unit four at about 2:00 a.m. The officer noticed an extension cord was being used to run electric power from outside the storage unit building to storage unit four. It was a very cold night. The officer knocked on the door of storage unit four, and Steven Bargen responded by opening the door. The storage unit was full of equipment, and the power cord was plugged into an electric heater which was heating a small living area within the unit. The officer asked if he could check serial numbers on some of the equipment within the unit. Bargen became hostile and told the officer to leave. The officer left.

Between Deputy Sheriff Guthard's late January encounter and February 22, 2011, others officers conducting rounds through the storage unit area also observed the red van in front of storage unit four. One officer noticed the van was equipped with a camera that would permit Bargen to see who was approaching the storage unit. Bargen was unwilling to open the storage unit door or speak with the officers when contacted by law enforcement during the first three weeks of February.

About a week and a half before February 22, 2011, Deputy Sheriff Guthard officer noticed several trucks pulled up to the back of the house at the 139th and O site, and he saw people loading furniture and household goods into the trucks. During his rounds following these events, the officer noted the house appeared completely dark, and there were no longer vehicles parked in front of the home. Based on these observations, the officer concluded the

residents of the property had moved and the home was now vacant. He therefore extended his normal rounds through the 139th and O site to include driving north on the access road/driveway, around the circle drive in front of the residence, and then exiting the area by returning to O street.

At approximately 1:45 a.m. on February 22, 2011, Deputy Sheriff Guthard drove his cruiser throughout strip mall/storage unit area of the 139th and O site, and upon returning to the access road/driveway, turned left to check the vacant residential area. While circling through, he saw a red van at the bottom of a hill and adjacent to the pole shed. He drove toward the vehicle to investigate and called dispatch to report his activity.

As he drove toward vehicle, Deputy Sheriff Guthard recognized the vehicle. It was Steve Bargen's red van and it was running. The red van was parked directly behind a blue vehicle and adjacent to the pole shed located on the property. (See Exs. 9 &10).



The blue vehicle was not running. Deputy Sheriff Guthard requested backup law enforcement assistance.

Deputy Sheriff Guthard then exited his patrol vehicle and began walking toward Bargen's red van. Steve Bargen exited the red van, stretching and yawning as if he had just been awakened. Deputy Sheriff Guthard asked Bargen if anyone else was present. Bargen responded that his friend, "Mark" was out there. Mark was later identified as the defendant, Mark Skoda. Bargen explained he was at the property site because Mark Skoda's vehicle, the blue Trailblazer parked in front of Bargen's vehicle, had broken down. In response to questioning, Bargen stated he did not know where Mark Skoda was. Bargen explained that he did not exit his vehicle after he arrived at the site, but he did see Mark Skoda approach the blue Trailblazer, grab some things from a toolbox, and walk into the darkness.

Bargen was pat-searched and seated in the back of Deputy Sheriff Guthard's cruiser. The officer then approached the blue Trailblazer and walked around it with a flashlight to look for Mark Skoda. While doing so, he noticed a red gas can with a 3/4-inch diameter hose extending 3 to 4-feet from the opening. (See Ex. 8). He also noticed a coffee grinder, some lithium battery boxes, what appeared to be lithium pulls or strips from batteries, burn marks on the ground, pseudoephedrine packaging, aluminum foil containers, and rolled up pieces of aluminum foil. (See Exs. 11, 14, 16, 17, 19, & 20). Based on these observations, and his training and experience, Deputy Sheriff Guthard suspected the items were being used to manufacture methamphetamine.

Deputy Sheriff Guthard contacted Sergeant Gaston. As instructed by Sergeant Gaston, Deputy Sheriff Guthard backed his cruiser onto a hillside vantage point to watch the area until backup officers arrived. A canine handler was contacted, and a dog was deployed at the scene to track Mark Skoda, who was apparently on foot. Sergeant Gaston contacted Deputy Sheriff Rhonda Wicht, who was stationed at 148th and O, the southeast perimeter of the property. Deputy Sheriff Wicht contacted the property owner, Ronald R. Skoda, Sr., and the location manager, Ronald R. Skoda, Jr., advised them of the circumstances, and requested

permission to search the property. Ronald Skoda, Sr. and Ronald Skoda, Jr. both stated that no one should be at the residential area of the property, and both granted consent to search. Ronald R. Skoda, Sr. granted consent to search inside the house, and stated that Mark Skoda should not be living at the property. (Ex. 21).

Law enforcement officers searched the inside of the home. They did not find Mark, but they did observe take out food containers, and a Coleman can (presumably a can of camp-stove fuel) with some receipts. Other than these items, the house was completely empty.

Lancaster County Deputy Sheriff Jeremy Schwarz, a member of a team trained to dismantle clandestine methamphetamine laboratories, arrived at the scene at 4:15 a.m. Deputy Sheriff Schwarz used his flashlight to look in the windows of the blue vehicle. On the front driver's seat, he saw a pill that appeared to be a pseudoephedrine tablet. On the floorboard, he noticed a translucent white grocery bag, and with his flashlight, he could see pseudoephedrine boxes and receipts in the bag. (See Ex. 22). Pseudoephedrine is a necessary precursor for the manufacture of methamphetamine. On the ground adjacent to the vehicle's exterior, Deputy Sheriff Schwarz saw pliers, the shell casing of a lithium battery, lithium strips or the peelings of lithium strips, and needle-nose pliers along with tin foil. (See Exs. 11, 14, 16, 17, 19, & 20). Approximately 10 feet from the passenger door of the blue Trailblazer, he saw two gym bags and a red gas can with a three-foot white plastic tube. Deputy Sergeant Schwarz recognized the gas can configuration to be what is known in the methamphetamine world as the hydrogen chloride gas generator, which is used in the last step of manufacturing methamphetamine.

Based on his observations, his training and experience, Deputy Sheriff Schwarz believed the officers had located a methamphetamine laboratory. Based on finding what appeared to be pseudoephedrine tablet and pseudoephedrine packaging in the vehicle, and

the components of a methamphetamine laboratory on the ground near the vehicle, Deputy Sheriff Schwarz believed a search of the red and blue vehicles would reveal evidence of ongoing criminal conduct.

The red van was searched first. The officers found a one-gallon jug of Transchem Muriatic Acid, a chemical used with the aluminum foil to create hydrogen chloride gas inside gas cans. They also found a coffee grinder, which is used to grind the pseudoephedrine tablets for use in manufacturing methamphetamine.

The blue Trailblazer, which is registered to defendant Mark Skoda, was searched without a warrant and without the defendant's consent. The defendant seeks to suppress all evidence found during this search.

## LEGAL ANALYSIS

Fourth Amendment rights are personal rights that cannot be asserted vicariously. U.S. v. Randolph, 628 F.3d 1022, 1026 (8th Cir. 2011); United States v. Barragan, 379 F.3d 524, 529-30 (8th Cir. 2004)(citing Rakas v. Illinois, 439 U.S. 128, 133-34 (1978). A defendant seeking to suppress evidence for alleged violations of the Fourth Amendment must demonstrate: (1) a subjective expectation of privacy in the place searched; and (2) that this expectation is one that society is prepared to recognize as objectively reasonable. United States v Green, 275 F.3d 694, 699 (8th Cir. 2001). If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched, he has no standing to claim that they were searched or seized illegally. U.S. v. Marquez, 605 F.3d 604, 609 (8th Cir. 2010); Barragan, 379 F.3d at 529. "The ownership, possession and/or control of the area searched or item seized is relevant to the analysis." Green, 275 F.3d at 699 (citing Gomez, 16 F.3d at 256).

Mark Skoda had no ownership or possessory interest in the 139th and O real estate. The owners and managers of the property were Ronald Skoda, Sr. and Ronald Skoda, Jr. Ronald Skoda, Sr. stated Mark Skoda was not living there, and the defendant offered no evidence to the contrary. Mark Skoda lacks standing to assert that the officers' entry unto the 139th and O real estate violated his Fourth Amendment rights. U.S. v. Hoey, 983 F.2d 890, 892 (8th Cir. 1993)(holding an apartment tenant who told her landlord she was moving, held a moving sale, abandoned the apartment, and was six weeks behind in rent had no reasonable expectation of privacy in the residence and no standing to challenge the legality of its search). See also, Abel v. United States, 362 U.S. 217, 241 (1960)(stating the warrantless search of a hotel room was lawful because the defendant had already vacated the room when the search was conducted); U.S. v. Reyes, 908 F.2d 281, 286 (8th Cir. 1990)(holding the defendant lacked any standing to object to the search of a rented locker after the rental period had expired); U.S. v. Morales, 737 F.2d 761, 763 (8th Cir. 1984)(holding defendant lacked standing to challenge the search of a motel room he vacated).

The evidence observed on the ground, in the home, and in or near the pole shed at the 139th and O property should not be suppressed, and the evidence obtained during the search of defendant's vehicle should not be suppressed as fruit of an illegal entry and search of the real estate.

Under the "automobile exception," the warrantless search of vehicles is constitutional if, before the search began, the officers had probable cause to believe the vehicle contained evidence of criminal activity. U.S. v. Brown, 550 F.3d 724, 727 (8th Cir. 2008). "Probable cause sufficient to justify a search exists where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. (quoting United States v. Kennedy, 427 F.3d 1136, 1140-41 (8th Cir.2005)).

Before the officers searched the defendant's vehicle, they had already observed Bargen using a storage unit at odd hours, heating the unit with a space heater, creating living arrangements within the unit, and using an under-vehicle camera to monitor who was approaching the unit. Bargen's vehicle was parked and running next to the defendant's vehicle when the vehicles were spotted on February 22, 2011, and during the search of Bargen's vehicle, the officers found evidence of methamphetamine manufacture. The officers found several components and tools for methamphetamine manufacture on the ground near the vehicles, and saw a pseudoephedrine tablet and pseudoephedrine packaging inside the defendant's vehicle when they looked through the windows. Considered in the totality, these facts firmly established probable cause to search the defendant's vehicle. See, e.g., U.S. v. Goff, 449 F.3d 884, 886 (8 th Cir. 2006)(defendant's purchase of copper tubing, clear rubber tubing, sandwich baggies, gloves, paper towels, pseudoephedrine, liquid fuel, muriatic acid, bleach, and aluminum foil, all common elements used in the manufacture of methamphetamine supported a finding of probable cause to search the defendant's residence); U.S. v. Ameling, 328 F.3d 443 (8th Cir. 2003)(holding a vehicle stop did not violate the Fourth Amendment where a reliable source reported two suspects had entered a store together, split the purchase of four boxes of pseudoephedrine, left the store separately but reunited at one of the suspect's vehicles, and then went to another store and purchased lithium batteries). The warrantless search of defendant's vehicle was supported by probable cause and did not violate the defendant's Fourth Amendment rights.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b), that defendant's motion to suppress, (filing no. 38), be denied in all respects.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS FURTHER ORDERED that the trial of this case remains set to commence before the Honorable Richard G. Kopf at 9:00 a.m. on December 12, 2011, or as soon thereafter as the case may be called, for a duration of five (5) trial days. Jury selection will be held at commencement of trial.

DATED this 23rd day of November, 2011.

BY THE COURT:

*s/Cheryl R Zwart*
United States Magistrate Judge

---

\*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.